UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:19-CR-17-HAB |
| ) | |
| TYSON HUDSON ) | |

## OPINION AND ORDER

Tyson Hudson ("the Defendant") filed a Petition to Reduce Sentence under the First Step Act (ECF No. 60), an Amended Petition to Reduce Sentence under the First Step Act (ECF No. 71) and three letters relating to these requests. (ECF Nos. 69, 70, 77).[1] The Government filed its initial response on June 16, 2020 and supplemented the response on June 29, 2020. (ECF Nos. 66, 79). For the following reasons, all the Defendant's Motions will be DENIED.

## PROCEDURAL BACKGROUND

On March 27, 2019, the Defendant was charged by single count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). The Defendant's charge resulted from a search of a house pursuant to a state search warrant wherein officers located 3 firearms and ammunition as well as evidence of drug activity. (Presentence Investigation Report "PSR", ¶¶s 9–20; ECF No. 35). During an interview, the Defendant admitted living at the house where the firearms were located and also admitted that the firearms were his. (PSR ¶ 22).

---

[1] He also filed a Motion to Vacate under 28 U.S.C. §2255 (ECF No. 75) which is currently briefing out.

After pleading guilty on June 18, 2019, pursuant to a written plea agreement, the Court sentenced the Defendant to 90 months of imprisonment with a two-year term of supervised release to follow. (ECF No. 41). The Defendant is presently incarcerated at Gilmer FCI, a BOP facility in Glenville, West Virginia with a scheduled release date in August 2025.

## DISCUSSION

The Defendant's Motions request a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

   (1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

   (i) extraordinary and compelling reasons warrant such a reduction …

   … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motion, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further, and he has not done so here. However, the Defendant did file with the Court a completed form addressed to the Warden requesting compassionate release. Defendant

2

represents that he submitted the form, dated April 3, 2020, to the Warden and did not receive a response. (ECF No. 69). He filed his first petition on May 7, 2020, 34 days after the date he first submitted his request to the Warden and seemingly consistent with the exhaustion provisions. Thus, the Court shall presume that the Defendant satisfies the exhaustion requirement.[2]

The Defendant asserts that "the presence of the coronavirus at Gilmer presents an extraordinary and compelling reason" warranting compassionate release. (ECF No. 60 at 9). Additionally, he indicates he has pre-existing conditions that place him at greater risk of serious complications if he contracts COVID-19, namely type II diabetes, diabetic ketoacidosis, high blood pressure, hyperglycemia, and high cholesterol. He is concerned not only for his own well-being, but also for the well-being of his elderly mother who he indicates is unable to obtain care for herself during the pandemic. He has completed the substance abuse program and has continued in other programming, so he is, "properly prepared for my release whether it be immediate or August 18, 2025." (ECF No. 70 at 1). He believes that "this unforeseeable coronavirus pandemic changes the dynamics of my punishment" and that it "involves a probable deprivation of life" (*Id.* at 2).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

---

[2] The Government asserts that "as of June 26, 2020, the BOP's database shows no attempts made by the defendant to exhaust any of his administrative remedies within the prison facility." (ECF No. 79 at 2). However, the documentation provided by the Defendant raises a question as to whether the information the Government received from the BOP is accurate. The Court shall not delve further into this dispute because it can "put to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant in this case has presented extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020).

The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and

his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020). !

In this case, the Defendant's filings give this Court few reasons, let alone extraordinary or compelling ones, to justify granting his motions. While the Defendant has articulated at least one medical condition that makes him more susceptible to the virus or that could create complications should he contract the virus, he has not shown that the condition is not adequately controlled and treated in the prison environment. Nor would this condition, in combination with the Defendant's age, he's 35, place him in an at-risk category.

As part of its response, the Government submitted the Defendant's medical records, all of which indicate that his medical conditions have been well-managed during his incarceration. He has suffered no hyper/hypo glycemic symptoms since his incarceration, the records make no reference to ketoacidosis, and he has had no emergent medical issues while incarcerated. If anything, it appears to the Court that the Defendant's health has improved while in the BOP's custody. The Defendant's PSR noted that prior to his arrest he had not managed his diabetes, allegedly due to financial constraints.[3] (PSR ¶ 73). This resulted in hospitalizations in August 2018 and February 2019 for diabetic ketoacidosis and hyperglycemia. (*Id.* ¶ 74). None of these types of scenarios have occurred during his incarceration and thus, the Defendant has not demonstrated that his medical conditions are not adequately managed, thereby raising his risk of contracting COVID-19 or having complications from it.[4]

---

[3] The Government surmises that the Defendant's financial conditions had nothing to do with his failure to treat his diabetes citing to the amount of cash found in his possession in February 2019.

[4] The Centers for Disease Control and Prevention (CDC) has identified individuals with *uncontrolled* diabetes as among those with higher risk of suffering from severe illness if they contract COVID-19. (emphasis added). *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

With respect to his family circumstances, the Defendant indicates that his mother is living alone during the pandemic and she suffers from congestive heart failure, an aortic tear, and other conditions which "can lead to her untimely demise." (ECF No. 71 at 5). He further notes that she is unable to timely obtain urgent care due to COVID-19 and thus, reducing his sentence due to coronavirus will benefit her as he will be able to care for her.

While the Court is sympathetic to the concerns of the Defendant regarding the health of his aging mother, "family circumstances that would amount to an extraordinary and compelling reason [for compassionate release] are strictly circumscribed under the [applicable United States Sentencing Commission] policy statement and do not encompass providing care to elderly parents." *United States v. Goldberg*, No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. April 13, 2020); *see also* U.S.S.G. § 1B1.13 cmt. n.1(C) (limiting family circumstances that may be considered an adequate reason for a sentence reduction to the need to care for the defendant's minor children or a spouse or registered partner, when no other caregiver is available). Thus, Courts have not considered a parent's health as an "extraordinary and compelling" reason under 18 U.S.C. § 3582(c)(1)(A), *see, e.g.*, *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (denying defendant's compassionate release motion to care for his widowed mother's deteriorating health); *Goldberg*, 2020 WL 1853298, at *4 (denying compassionate release motion and stating that "a desire to care for one's elderly parents does not qualify as an 'extraordinary and compelling' reason for release" under 18 U.S.C. § 3582(c)(1)(A)); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (denying compassionate release motion to care for defendant's ill mother because "[m]any, if not all inmates, [have] aging and sick parents"). Accordingly, this factor does not aid the Defendant's cause. !

6

As for his confinement, as of July 9, 2020, Gilmer FCI has no COVID-19 positive inmates or staff and has 6 recovered inmates. There have been no inmate deaths.[5] "The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). !

Aside from his generalized fear of contracting COVID-19, the Defendant has not set forth any basis for this Court to conclude that Gilmer FCI is unable to successfully contain the few outbreaks there. The Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The relatively low infection rate and the rate of recovery at this institution is a testament to the BOP's mitigation and safety efforts.

Finally, with respect to the §3553(a) factors, the Court observes that the Defendant has served very little of his 90-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect

---

[5] https://www.bop.gov/coronavirus/

7

the public from further crimes of the defendant. The Defendant has a criminal history of gun and drug offenses as well as a felony conviction for battery of a pregnant woman. (PSR ¶¶ 9–20). The instant offense yielded three firearms belonging to the Defendant, all of which were discovered in his bedroom within a home where drug dealing was suspected, and drugs were found. Given these circumstances, the Defendant poses a significant threat to the community as no prior intervention by authorities has curbed his penchant for violating the law. The Court finds that the significant sentence reduction that Defendant seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motions are DENIED.

## CONCLUSION

Based on the foregoing, the Defendant's Motions (ECF Nos. 60, 71) are DENIED.

So ORDERED on July 13, 2020.

                                                s/ *Holly A. Brady*
                                                JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT